UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In Re:

                                      Case No. 815-70120-ast

CENTEREACH DEVELOPMENT CORP.  (Chapter 7)

       Debtor

**COMPLAINT**

CRAIG GIARDINI AND TRACEY
GIARDINI d/b/a CRAIGS CAR CARE
CENTER,

       Plaintiff

                                      Adversary Proceeding No.

   -against-

THE BANKRUPT ESTATE OF
CENTEREACH DEVELOPMENT CORP.,
GULF OIL LIMITED PARTNERSHIP and
CUMBERLAND FARMS, INC.,

       Defendants
-------------------------------------------------------x
To the Honorable Alan S. Trust,
United States Bankruptcy Judge:

      Craig Giardini ("Craig") and Tracey Giardini ("Tracey") d/b/a Craigs Car Care Center ("Craigs Car Care Center") (Craig, Tracey and Craigs Car Care Center are referred to in the aggregate as the "Tenant"), by and through their attorneys, Zinker & Herzberg, LLP., as and for their Complaint herein, respectfully shows as follows:

**JURISDICTION AND PARTIES**

      1.     This action arises under 11 U.S.C. Sections 105 and 365, as the action arises in and under the pending Chapter 7 case of the Debtor Centereach Development Corp (the "Debtor" or the "Landlord").

2. This action is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (B), (K), (M) and (O) and 28 U.S.C. Section 1334.

3. The Debtor filed a voluntary petition for relief under and pursuant to Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") on January 13, 2015 (the "Filing Date").

4. The Defendants Gulf Oil Limited Partnership ("Gulf") and Cumberland Farms, Inc. ("Cumberland") can be served with process c/o McCusker, Anselmi, Rosen, & Carvelli, P.C., 805 Third Avenue, 12th Floor, New York, New York 10022 and the Law office of William S. Katchen, LLC, 210 Park Avenue, Suite 301, Florham Park, New Jersey 07932, as their attorneys of record.

**Underlying Allegations**

5. The Debtor and the Tenant entered into the Agreement of Sub-Lease between the Debtor, as Landlord, and the Tenant, as the lessee of the premises dated April 28, 2010, which provided for a three (3) year rental term for the subject premises (the "Agreement of Sub-Lease"). The Agreement of Sub-Lease between the Debtor and the Tenant was extended for an additional three (3) year period pursuant to the Lease Extension and Modification Agreement dated March ___, 2013 (the "Extension").

6. Article 1.1 of the Agreement of Sub-Lease provided:

"Landlord as and for and in consideration of the rent to be paid and the covenants and agreements made by Tenant, its legal representatives, successors, and assigns to be kept and performed by it, Landlord hereby sub-leases and by this Sub-Lease, Tenant does hereby take and hire subject to the terms and conditions hereof, only the repair bays with the right of ingress and egress located in the building known as 2033 Middle Country Road, Centereach, NY 11720."

And Article 4.1 of the Agreement of Sub-Lease further provided:

"Tenant will use and occupy the Demised Premises solely for use as an automobile repair facility and for no other purpose. Tenant will not use or permit the use of the Demised Premises or any part of it in any way that would violate any of the covenants, agreements,

> terms, provisions, and conditions of this Sub-Lease, the lease in effect during the Term between Mobil and Landlord, or in violation of any certificate of occupancy for the Demised Premises."

Accordingly, the Tenant used and continues to occupy the repair bays in the premises known as 2033 Middle Country Road, Centereach, NY 11720 as an automotive repair facility and shop.

7. Paragraph 2.6 of the Agreement of Sub-Lease further provided in pertinent part: "Landlord will supply the Demised Premises with electric, water and garbage removal."

8. In accordance with the provisions set forth in Article 5 of the Agreement of Sub-Lease entitled; "Insurance", the Tenant was to procure and maintain all of the requisite insurance in accordance with the provisions of Article 5 of the Agreement of Sub-Lease. In full compliance thereof, the Tenant's insurance policy is effective for the October 7, 2014 to October 7, 2015 year.

9. Upon information and belief, the Tenant was and continues to be current on all of its rent obligations. In fact, the Tenants delivered to a check in the amount of Four Thousand Five Hundred Seventy Eight and xx/100 Dollars ($4,578,00) to the Debtor in January of 2015 for the January, 2015 rent. The rent check was negotiated by the Debtor on January 13, 2015, the same day that the Debtor caused its voluntary Chapter 7 bankruptcy petition to be filed. The undersigned counsel is uncertain whether the January of 2015 rent check was deposited on, before or after the voluntary Chapter 7 petition was filed with this Honorable Court on January 13, 2015.

10. Article 30 of the Agreement of Sub-Lease entitled: "Security" required the Tenant to make certain payments to the Debtor, which moneys were to be held as security to insure the Tenant's faithful compliance with the terms and provisions of the Agreement of Sub-Lease. Upon information and belief, the Tenant made all of the required security deposits required in its

faithful compliance with its security provision obligations.  To date, the Debtor, the Chapter 7 trustee, Gulf and/or Cumberland has not offered to refund the security deposits made by the Tenant.

11. Upon information and belief, the Tenant has fully complied with its obligations and responsibilities under the Agreement of Sub-Lease and the Extension Agreement.

12. Article 33.10 of the Agreement of Sub-Lease provided: "Landlord may terminate this Sub-Lease upon 30 days notice to Tenant."  Upon information and belief, a 30 day notice to the Tenant has not been provided by any party seeking to reject or terminate this lease agreement.

13. The Tenant has received correspondence dated January 21, 2015 from Bruce S. Rosen, Esq. of McCusker Anselmi Rosen Carvelli entitled: **"NOTICE TO VACATE WITHIN 72 HOURS".**  The second paragraph of the Notice to Vacate within 72 Hours provided:

> "In order to secure and protect the stations, Gulf has asked for and obtained an Order from Judge Allen [sic] S. Trust of the U.S. Bankruptcy Court in [sic] Islip, N.Y. permitting Gulf to board up the C-stores and station buildings, and well as to fence off or chain off the properties to protect them against vandalism.  To the extent this action may disrupt your livelihood, Gulf regrets having to take this action.  However, in recent days, several of these stations have already been the target of thieves taking advantage of locations without proper lighting or attendants, and Gulf must take all appropriate actions to secure its property while the Court decides the fate of the station franchisees and leases.  Please note that Mr. Keshtgar consented to Gulf's request to secure and the Order was entered only after a telephonic hearing in which Mr. Keshtgar's counsel participated."

14. Neither Gulf nor Cumberland ever served the Notice of Motion for the Entry of an Emergent Order Approving Access Agreement or Otherwise Permitting Cumberland Farms, Inc. and Gulf Oil Limited Partnership to Access Debtors' Premises dated January 13, 2015 or its related Motion for the Entry of an Emergent Order Approving Access Agreement or Otherwise Permitting Cumberland Farms, Inc. and Gulf Oil Limited Partnership to Access Debtors'

Premises dated January 13, 2015 (the "Motion") on the Tenant. Paragraph No. 14 of the Motion stated:

> "Copies of this motion were provided to all parties filing an appearance in this matter (via ECF), as well as the office [sic] of the United States Trustee, the Chapter 7 Trustee (via electronic mail), Debtor's creditors holding the twenty largest unsecured claims as identified in Debtor's petition (via Federal express [sic]) and upon Debtors' secured creditor, New York Commercial Bank (via electronic mail to counsel)."

Neither this paragraph nor the accompanying Certificate of Service mentioned that the Motion and related papers stated that the motion papers were ever served on the Tenant and/or any of their sub-lessee of any other demised premises whereat there were other businesses operating in a sub-lessee capacity. Accordingly, the closing of the facilities amounts to an unlawful taking of property without due and fair notice to the Tenant or the Tenant to respond to the motion papers.

15.     It is also problematic whether the terms and provisions of the Order Approving Access Agreement dated January 20, 2015 authorized and permitted Gulf and/or Cumberland to terminate the Agreement of Sub-Lease and the Extension Agreement between the Debtor and the Tenant, and especially the emergency closing of the Tenant's business operation as an automotive repair service facility. The Order Approving Access Agreement dated January 20, 2015 provided in pertinent part:

> "**ORDERED,** that Gulf may immediately access Debtors' premises to secure the premises against potential environmental damage and vandalism as set forth in the Agreement, subject to the following conditions:
> 1.     Within thirty (30) days of the date on which Gulf completes the draining of pipes, tanks, and pumps of fuel at the premises (which fuel NYCX (defined as New York Commercial Bank) asserts constitutes its collateral), Gulf shall provide a detailed accounting to the Chapter 7 Trustee and NYCX of all usable fuel transferred to other Gulf or Mobil-branded stations (the 'Fuel'), and sludge transported for recycling or disposed of from each tank and each premises (the 'Tank Bottom'), as well as the amount of any proceeds received from the Fuel and proceeds received and/or costs incurred in recycling or disposing of the Tank Bottom. The Court will determine the value of any Fuel by Gulf and/or the costs incurred by Gulf in removing the Tank Bottom at a later date."

The Order Approving Access Agreement dated January 20, 2015 never specifically referenced the closing of the applicable automotive repair service bays or the Tenant, or the environmental or safety issues caused by the Tenant.

16.     Robert L. Pryor, Esq., the Chapter 7 trustee of the Estate of the Debtor has not terminated or rejected the Agreement of Sub-Lease or the Extension Agreement in accordance with the provisions set forth in Section 365 of the Bankruptcy Code.  In fact, Section 365(d)(3) of the Bankruptcy Code provides:

> "The trustee shall timely perform any the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.  This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsections (b) or (f) of this section.  Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."

Herein, the provisions set forth in Section 365(b)(2) of the Bankruptcy Code are inapplicable.

17.     The Debtor has already accepted the January of 2015 rent and the Chapter 7 Trustee must continue to perform its obligations and responsibilities under the lease, including but not limited to the return of the security deposit.

18.     The Tenant currently has equipment and tools that it needs to render the applicable car repair service which must be secured.  Further, there are cars belonging to innocent third parties which the Tenant is holding in a trust capacity which must also be considered by this Honorable Court.  Incidentally, it is may be these cars awaiting repairs and pick-up that Gulf and/or Cumberland may claim were "abandoned" in their motion papers.

19. The Tenant is also simultaneously filing a motion for a restraining order on an order to show cause basis to prevent the immediate closing of the Tenant's automobile repair facility and the irreparable harm it will suffer as the sub-tenant of the demised premises.

20. No prior request for the relief sought herein has been filed with this or any other Court.

WHEREFORE, the Tenant respectfully requests this Honorable Court to issue an order: (I) enjoining and prohibiting the Estate of Centereach Development Corp, Gulf and/or Cumberland from: (a) terminating and rejecting the Agreement of Sub-Lease and the Extension Agreement, (b) continuing the lease arrangement until a minimum of thirty (30) days after the Trustee's rejection of the Agreement of Sub-Lease and the Extension Agreement, (c) curtailing electrical, water and garbage disposal services, and/or (d) otherwise interfering with the Tenant's business operations at the demised premises; (II) the full return of the security deposit moneys made by the Tenant; (III) $100,000 for the unilateral termination of the lease agreement; (IV) attorneys' fees and costs for this action; and (V) for such other and further relief as is just and proper.

Dated:   Hauppauge, New York
         January 26, 2015

                                        ZINKER & HERZBERG, LLP
                                        Attorneys for Tenant

                                        By:  /s/ Jeffrey Herzberg  _____
                                             Jeffrey Herzberg
                                        300 Rabro Drive, Suite 114
                                        Hauppauge, New York 11788
                                        (631) 265-2133